[Civ. No. 12236. Third Dist., June 24, 1970.]

FREDERICK FRATES, Plaintiff and Respondent, v.
DAVID W. BURNETT et al., Defendants and Appellants.

## COUNSEL

John B. Heinrich, County Counsel, and Lawrence R. Cruz, Deputy County Counsel, for Defendants and Appellants.

Kronick, Moskovitz & Vanderlaan and Fred Girard for Plaintiff and Respondent.

## OPINION

**BRAY, J.**\*—Defendants appeal from a judgment granting a peremptory writ of mandate compelling the Board of Education of Folsom-Cordova Joint Unified School District (hereinafter "District") to reinstate petitioner in his job of maintenance mechanic.

### Questions Presented

1. The District's disciplinary proceedings rules do not comply with section 13583 Education Code.

2. Petitioner was denied the benefit of District's rule 4219.6.

3. The denial of procedural due process was prejudicial.

### Record

Petitioner, 61 years old, has served the District as a maintenance mechanic for some 12 years. As will hereinafter appear, certain disciplinary proceedings were taken against him by District resulting in his dismissal. He petitioned the Sacramento County Superior Court to set aside the dismissal and to reinstate him in his former position. After a hearing the court found that the District's disciplinary rules did not comply with the requirements of section 13583 of the Education Code; that the District did not comply with its own rule 4219.6; and that petitioner was improperly discharged. Thereupon, a peremptory writ was issued commanding petitioner to be restored to his former position.

### The Disciplinary Proceedings

There is no dispute as to the facts of the proceedings taken. About June 7, 1967, District's administrative staff received information that petitioner, who had never theretofore suffered disciplinary proceedings, had been frequenting the Aero Club, a bar and restaurant in Sacramento, during working hours of the months of April, May and June. On June 14 a meeting was held between petitioner and District personnel, at which facts of his behavior were discussed. On June 20 at an executive meeting of the District's Board of Education the superintendent conveyed to it his information and belief that petitioner had been frequenting a bar. The board then dismissed petitioner, effective the following day. On June 21 petitioner was handed a handwritten letter informing him of his dismissal and of his right to present his case in person within five days to the superintendent, and if

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

the case were not adjusted to his satisfaction, he could appeal to the District's board whose decision would be final. Petitioner met with the superintendent who advised him that he could do nothing to change the board's decision as he had no authority to do so. Petitioner then appealed to the board.

On August 15 the hearing of petitioner's appeal was heard. Petitioner raised the contention that the board's dismissal of him had deprived him of the right to present his case to the superintendent for independent adjustment and that the proceedings were invalid. The board denied his contention and proceeded with the hearing.

A brother of the superintendent, who works near the Aero Club, testified that during a two-month period he had noticed petitioner parking the District pickup truck in the vicinity of the club for one to two hours at a time approximately three times a week. Although he saw petitioner enter the bar occasionally, he assumed that petitioner was in the bar on all occasions when the pickup was parked nearby. On one occasion petitioner's immediate superior observed petitioner come out of the club at 10:55 a.m., go back inside, come out again, get into the District's pickup and drive off. Petitioner was an "expediter" whose duties basically were to ascertain and procure materials needed by the District mechanics.

Petitioner testified that the club was owned by his sister whose husband had died some four or five months previously. The club is closely located to many of the suppliers whom petitioner was required to contact and from whom he picked up parts. Two of them were located a block or less away. On occasions petitioner would park the pickup in a yellow loading zone across the street from the club and walk to these two firms. He would frequently take his coffee break at the club, drinking only coffee (because of a physical condition he did not drink alcoholic drinks), and then return for lunch. There was no evidence that he consumed alcoholic liquor at the club, nor was there any testimony that his spending his coffee break and lunch time at the club violated any District policy. When a supplier could not deliver to him a required part or equipment immediately, he would call into the District office and was instructed to stay in Sacramento until the item could be picked up. On these occasions he waited at the club. His superior testified that while he could not recall any specific occasion when he instructed petitioner to remain in Sacramento, he would not deny that such an instruction might have been given.

Petitioner testified that on one occasion when he was at the club for coffee he was approached by a realtor concerning the sale of the bar. Petitioner's sister had asked him to help her dispose of the bar. On that occasion he remained there for approximately an hour and 15 minutes. Petitioner's superior testified that in his opinion petitioner had never taken any

unusual amount of time in completing the work assigned to him; that petitioner was entitled to a coffee break and had never appeared at work after consuming alcohol. On this evidence the board ordered his dismissal, informing him that the dismissal was due to (1) excessive absence from work, (2) incompetence, and (3) conduct prejudicial to the relationship of the District with the public.

Surprisingly the court on the mandate hearing, although it held that the board's proceedings violated section 13583 of the Education Code and its own rule 4219.6 and ordered petitioner restored to his position, found that the record supported a finding that petitioner was guilty of the three derelictions above mentioned.

### Failure to Comply With Section 13583 of the Education Code

That section reads in pertinent part: "Any employee designated as a permanent employee shall be subject to disciplinary action only for cause as prescribed by rule or regulation of the governing board, but the governing board's determination of the sufficiency of the cause for disciplinary action shall be conclusive. The governing board shall adopt rules of procedure for disciplinary proceedings which shall contain a *provision for informing the employee by written notice of the specific charges against him, a statement of his right to a hearing on such charges,* and the time within which such hearing may be requested which shall be not less than five days after service of the notice to the employee, and a card or paper, the signing and filing of which shall constitute a demand for hearing, and a denial of all charges. The burden of proof shall remain with the governing board, and any rule or regulation to the contrary shall be void.

"       .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"This section shall apply only to districts not incorporating the merit system as outlined in Article 5 (commencing with Section 13701) of this chapter." (Italics added.)

Appellant District has not incorporated the merit system.

Pursuant to this statute District enacted the following personnel rules set forth here in part:

*"Termination of Employment*

"       .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"B. *Dismissal for Cause.* Dismissal for cause may be made without the usual two weeks notice. It is understood that the District has the right to discharge a permanent employee at any time for just and sufficient cause,

and that the employee shall have the right (as herein provided) to a hearing in the event of such discharge. Just and sufficient causes for immediate discharge include, but are not limited to, the following:

"1. Excessive absence from work.

"2. Incompetence.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"11. Conduct prejudicial to the relations of the district with the public. [Rule 4219.5]

*"Appeal Against Dismissal*

"Any classified employee dismissed for cause, who believes that he has been unjustly dealt with or that any regulation has not been properly applied or interpreted, shall be entitled to present his case in person to the superintendent within 5 days.

"Following the conference with the Superintendent *if the case is not adjusted to the satisfaction of a regular employee,* he shall be entitled to an appeal in writing to the Board of Education. The Board's decision is final." (Italics added.) (Rule 4219.6)

■ It will be noted that the District rules clearly do not comply with section 13583. That section requires a provision in the rules that the employee to be disciplined be given a hearing prior to discipline, preceded by a notice in writing of the specific charges against him.

Rule 4219.5 adopted by the District provides in effect that the employee may be dismissed without notice and a hearing, but after dismissal he may "present his case" to the superintendent. Such presentation is referred to as a "conference." If the case is not "adjusted" to his satisfaction, he may appeal to the board which has already dismissed him.

■ It has been held that "Rules and regulations adopted by a board of education are, in effect, a part of a teacher's employment contract and the teacher is entitled to their enforcement." (*American Federation of Teachers* v. *Oakland Unified School Dist.* (1967) 251 Cal.App.2d 91, 97 [59 Cal. Rptr. 85]; *Heckley* v. *Board of Education* (1959) 53 Cal.2d 218, 220-221 [1 Cal.Rptr. 4, 347 P.2d 4].) Although this rule has been made on behalf of teachers, no distinction is seen between a teacher and a classified employee of the District.

■ An employment contract between a school district and an employee is in essence a contract of adhesion and therefore will be construed against the school district. A contract of adhesion is an agreement not resulting

from the freedom of bargaining but one which permits the employee only to adhere to or reject it. (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal. App.2d 690, 694 [10 Cal.Rptr. 781].) "[A] party hired under such a contract lacks the economic strength to secure a change in the language of the document by negotiation, and, therefore, any ambiguity in the instrument should be resolved against the draftsman, and any ambiguous provision should be construed in favor of the party adhering to the instrument." (*Hamilton* v. *Stockton Unified School Dist.* (1966) 245 Cal.App.2d 944, 952 [54 Cal.Rptr. 463].)

■ The purpose of defined civil service procedures was described in *American Federation of Teachers* v. *Oakland Unified School Dist., supra,* at page 97, as improving morale and performance " 'by establishing fair procedures and criteria which minimize the risk of arbitrary or prejudiced decisions or decisions based on incomplete or inaccurate facts or misunderstandings.' "

■ Obviously rules required by statute to be adopted by a school district are also a part of a teacher's employment contract. ■ The failure of the District to provide for or give petitioner notice of charges and a hearing before dismissing him constituted as to him a denial of procedural due process.

### Denial of Benefit of Rule 4219.6

■ In addition to being deprived of an initial notice of charges and a hearing by the board, petitioner was denied the benefit of a portion of that rule which provides as hereinbefore set forth that the dismissed employee may "present his case" to the superintendent, and if at the "conference" it is "not adjusted to . . . [his] satisfaction" he may appeal to the board.

The interpretation of that rule by the board and the superintendent does not make sense. Whether the application to the superintendent be termed an "appeal," or as construed by the District an "opportunity for communication," it cannot reasonably be considered that the rule did not contemplate that the superintendent had power to do something as a result of that conference other than to tell the dismissed employee that he had no power to do anything. Otherwise, the rule intended that the employee was to do an idle act—tell his troubles to someone who was completely without power to anywise help the employee. Surely the words "if the case is not adjusted to the satisfaction of" indicates that the superintendent had the power to make some adjustment.

The District's construction of the right to confer with the superintendent that it is for the purpose of having the superintendent explain the board's

reason for dismissing him "and perhaps lessen the sting of the dismissal by evoking an understanding of the District's position in the matter" falls far short of the promise implied in the language of the rule that the superintendent could have the case "adjusted to the satisfaction of" the employee and borders on the ridiculous.

Section 939 of the Education Code provides that additional powers and duties to those specified in the section may be granted to the superintendent by the board. Since we must construe the rules against the draftsman, i.e., the District, it seems clear on a reading of rule 4219.6 that the superintendent had power to hear petitioner's case and adjust it. Since the superintendent declined this responsibility, it is readily apparent that the rule was not followed and that petitioner was denied the benefit of the intermediate step. It may very well be that because the superintendent had initially recommended petitioner's dismissal to the board he would not have exercised his power in favor of petitioner. However, as a part of due process he was required by the rule to consider petitioner's case with a mind open to his own power. Again here petitioner was denied procedural due process.

### Denial of Procedural Due Process
### Was Prejudicial

Failure to comply with civil service procedures will result in an invalid discharge. (*Baumgardner* v. *City of Hawthorne* (1951) 104 Cal. App.2d 512, 517 [231 P.2d 864].) And an administrative agency may not act in excess of its power. Any act so done is void. (*Ferdig* v. *State Personnel Board* (1969) 71 Cal.2d 96, 103 [77 Cal.Rptr. 224, 453 P.2d 728].) It has been specifically held that a school board cannot ignore its own rules and repudiate its method of procedure. (*Hamilton* v. *Stockton Unified School Dist., supra,* 245 Cal.App.2d at p. 950.)

It is apparent that the evidence on which petitioner was dismissed was very slight. His unblemished work record and age, the fact that his superior testified that petitioner had not taken an unusual amount of time to perform his work and was entitled to a coffee break and lunch period, and that no question of use of alcohol was involved, left little justification for the severe penalty of dismissal without at least a warning to keep away from his sister's bar.

A proper hearing by the superintendent with knowledge of his powers could have resulted otherwise than it did, even though the superintendent

testified that if he had felt the dismissal was improper, he would have recommended reinstatement to the board.

■ In any event, the failure of the board to give petitioner a hearing on noticed charges was prejudicial for the reason, among others, that the board put itself in the position of being petitioner's prosecutor and then at a later date his judge.

Section 13583 provides that District board's determination of the "cause for disciplinary action shall be conclusive." That the board considered its action in dismissing petitioner without notice or hearing conclusive and that it did not consider the hearing of petitioner's appeal to it after dismissal as a hearing of the type he was entitled to before dismissal is shown by the board's final decision: "the Board of Education deny the claim of Frederick Frates regarding his dismissal. . . ."

The fact that petitioner finally received a hearing before the board which had already prejudiced his case could not overcome the prejudice resulting from his dismissal without notice or hearing. (See *American Federation of Teachers* v. *Oakland Unified School Dist.* (1967) 251 Cal.App.2d 91 [59 Cal.Rptr. 85], where the transferring of a teacher to another school without the rules on transfer being complied with was held prejudicial.)

The District has cited as applicable *California School Employees Assn.* v. *Personnel Com.,* *(Cal.App.) 85 Cal.Rptr. 246, which held that in spite of certain discrepancies in following the procedures required in a disciplinary proceeding the procedures were substantially complied with. The case is not in point as it dealt with rules adopted by the board of education under sections of the Education Code which apply solely to disciplinary proceedings against employees of a school district which has adopted the merit system and not to requirements set forth in section 13583. Section 13742, applicable to merit system proceedings, specifically authorizes the board to suspend, demote or dismiss an employee without notice or hearing. The procedural confusion followed in that case did not, as in the case at bench, deprive the employee of his full rights to due process.

As the dismissal of petitioner by the District was void, the trial court should not have made a finding on the sufficiency of the evidence before the board and that finding is disapproved. The judgment granting a per-

*A hearing was granted by the Supreme Court on May 27, 1970. The opinion of that court is reported in 3 Cal.3d 139 [89 Cal.Rptr. 620, 474 P.2d 436].

emptory writ of mandate compelling the District to reinstate petitioner in his job as maintenance mechanic is affirmed.

Pierce, P. J., and Regan, J., concurred.