[No. H035065. Sixth Dist. May 24, 2011.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 230,
Plaintiff and Appellant, v.
CITY OF SAN JOSE, Defendant and Appellant.

[No. H035425. Sixth Dist. May 24, 2011.]

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 230,
Plaintiff and Appellant, v.
CITY OF SAN JOSE, Defendant and Respondent.

1180

COUNSEL

Wylie, McBride, Platten & Renner, Christopher E. Platten and Mark Renner for Plaintiff and Appellant.

Davis, Cowell & Bowe, W. David Holsberry; Woodley & McGillivary, Thomas A. Woodley and Baldwin Robertson for International Association of Firefighters Local Union 230 as Amicus Curiae on behalf of Plaintiff and Appellant.

Richard Doyle, City Attorney, Nora Frimann, Assistant City Attorney, Robert Fabela and Steven B. Dippell, Deputy City Attorneys, for Defendant and Appellant and for Defendant and Respondent.

OPINION

BAMATTRE-MANOUKIAN, J.—

## I. INTRODUCTION

These appeals arise from a labor dispute between the City of San Jose (City) and the International Association of Firefighters, Local 230 (Union), which represents the firefighters employed by the City. After the Firefighters Procedural Bill of Rights Act (Gov. Code, §§ 3250–3262; FFBOR)[1] became effective in 2008, the Union requested that the City meet and confer over the implementation of the FFBOR's new procedures for administrative appeals of firefighter discipline. The City refused to meet and confer on the ground that, as a charter city, it was not obligated to implement the FFBOR.

---

[1] All statutory references hereafter are to the Government Code unless otherwise indicated.

The Union then filed a petition for a writ of mandate and to compel arbitration of the dispute regarding the City's obligation to meet and confer over the implementation of the FFBOR. The City opposed the petition and filed a motion for judgment on the pleadings, in which it argued that under the home rule provisions of California Constitution, article XI, section 5, it was not required to implement the FFBOR's procedures for administrative appeals in firefighter disciplinary proceedings because the FFBOR's procedures conflicted with the City's existing procedures.

The trial court denied the Union's petition. The court determined that the Union's petition was based upon the City's refusal to meet and confer regarding the implementation of the FFBOR, which might constitute a violation of the Meyers-Milias-Brown Act (§ 3500 et seq.; MMBA), and therefore the Public Employment Relations Board (PERB) had exclusive jurisdiction over the dispute. Alternatively, the trial court denied the petition on the grounds that arbitration could not be compelled under the parties' collective bargaining agreement because the Union had failed to meet its burden to show that the parties had reached an impasse after meeting and conferring in good faith, and, in any event, the petition was moot since the memorandum of agreement had expired.

In its first appeal (H035065), the Union contends that the trial court erred in denying its petition for a writ of mandate and to compel arbitration because the court has jurisdiction in this matter. For reasons that we will explain, we determine that the Union's petition is not moot and PERB has exclusive initial jurisdiction because the petition alleges an unfair labor practice within the meaning of section 3509 of the MMBA: City's refusal to meet and confer regarding the implementation of the FFBOR. (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 604 [110 Cal.Rptr.3d 718, 232 P.3d 701] (*Operating Engineers*).) We will therefore affirm the judgment.

In its second appeal (H035425)[2] the Union seeks review of the postjudgment order awarding attorney's fees to the City in the event the Union prevails in its first appeal and the judgment is reversed on the merits. Since we have affirmed the judgment, we will also affirm the postjudgment order awarding attorney's fees.

The City has filed a cross-appeal in the Union's first appeal (H035065). In the proceedings below, the trial court denied the City's motion for judgment on the pleadings, finding that the Union had sufficiently pleaded a petition to

---

[2] On May 26, 2010, this court on its own motion ordered that appeals Nos. H035065 and H035425 be considered together for the purposes of briefing, oral argument and disposition.

compel arbitration and a claim for declaratory relief. The City has appealed that order on the ground that, as a matter of law, under the home rule provisions of the California Constitution (art. XI, § 5) the City is not obligated to implement the FFBOR because it is a charter city. As we will further explain, the City's motion for judgment on the pleadings was properly denied because, under the California Supreme Court's decisions in *Baggett v. Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874] (*Baggett*) and *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278 [132 Cal.Rptr.2d 713, 66 P.3d 718] (*County of Riverside*), the FFBOR is a procedural statute that does not violate the home rule provisions of the California Constitution and therefore the FFBOR applies to the City.

## II. LEGAL BACKGROUND

To provide context for our summary of the facts, the procedural background, and the parties' contentions on appeal, we will begin with a brief overview of two statutes, the MMBA and the FFBOR, and one state agency, PERB.

### A. *The Meyers-Milias-Brown Act (MMBA)*

"In 1961, the Legislature enacted the George Brown Act (Stats. 1961, ch. 1964, pp. 4141–4143), which for the first time recognized the rights of state and local employees to organize and to have their representatives meet and confer with their public agency employers over wages and working conditions. In 1968, the Legislature went a step further by enacting the MMBA (Stats. 1968, ch. 1390, pp. 2725–2729), which 'authorized labor and management representatives not only to confer but to enter into written agreements for presentation to the governing body of a municipal government or other local agency.' [Citations.]" (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1083 [29 Cal.Rptr.3d 234, 112 P.3d 623] (*Coachella Valley*).)

The stated purpose of the MMBA "is to provide 'a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment . . . .' ([§] 3500.)" (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 536 [28 Cal.Rptr.2d 617, 869 P.2d 1142].) To achieve this legislative purpose, "[t]he MMBA imposes on local public entities a duty to meet and confer in good faith with representatives of recognized employee organizations, in order to reach binding agreements governing wages, hours, and working conditions of the agencies' employees. ([§] 3505.)" (*Coachella Valley, supra,* 35 Cal.4th at p. 1083.)

It is well established that the MMBA applies to charter cities. (*People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 597 [205 Cal.Rptr. 794, 685 P.2d 1145] (*Seal Beach*).)

### B. The Public Employment Relations Board (PERB)

"The history of the PERB begins in 1975, when the Legislature adopted the Educational Employment Relations Act ([§§] 3540–3549.3; hereafter the EERA) . . . . As part of this new statutory scheme, the Legislature created the Educational Employment Relations Board (EERB), an 'expert, quasi-judicial administrative agency modeled after the National Labor Relations Board, to enforce the act.' [Citation.] The Legislature vested the EERB with authority to adjudicate unfair labor practice charges under the EERA. [Citation.] [¶] The Legislature structured the EERA with the intention that it would eventually be expanded to incorporate other public employees." (*Coachella Valley, supra,* 35 Cal.4th at pp. 1084–1085.) The Educational Employment Relations Board was renamed the PERB in 1977. (*Id.* at p. 1085.)

"Since 1977, the PERB's jurisdiction has continued to expand as the Legislature has enacted new employment relations laws covering additional categories of public agencies and their employees." (*Coachella Valley, supra,* 35 Cal.4th at p. 1085.) "In 2000, the Legislature extended PERB's jurisdiction to cover matters arising under the MMBA—this was done through enactment of [section] 3509, which became effective July 1, 2001. (Stats. 2000, ch. 901, § 8.) Subdivision (b) of that statute provides in relevant part: 'A complaint alleging any violation of [the MMBA] . . . shall be processed as an unfair practice charge by [PERB]. *The initial determination as to whether the charge of unfair practice is justified* and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the *exclusive jurisdiction* of [PERB].' . . . This enactment removed 'from the courts their initial jurisdiction over MMBA unfair practice charges' [citation] and vested such jurisdiction in PERB [citation]." (*Operating Engineers, supra,* 49 Cal.4th at p. 605.)

### C. The Firefighters Procedural Bill of Rights Act (FFBOR)

The FFBOR (§§ 3250–3262) became effective on January 1, 2008. (Stats. 2007, ch. 591, § 2.) The Legislative Counsel's Digest described the legislation as follows: "This bill would enact the Firefighters Procedural Bill of Rights Act to prescribe various rights of firefighters, defined as any firefighter employed by a public agency, including a firefighter who is a paramedic or emergency medical technician, with specified exceptions. The bill would prescribe rights related to, among others, political activity, interrogation, punitive action, and administrative appeals, with specified requirements

imposed upon the employing agency and the imposition of a civil penalty for a violation thereof. The bill would also specify that reimbursement of funds by the state shall be limited to the actual costs associated with the act, as specified. [¶] By adding to the duties of local agencies to comply with that act, this bill would impose a state-mandated local program." (Legis. Counsel's Dig., Assem. Bill No. 220 (2007–2008 Reg. Sess).)

The FFBOR includes several provisions that concern disciplinary proceedings for firefighters. Section 3254, subdivision (b), provides, "Punitive action or denial of promotion on grounds other than merit shall not be undertaken by any employing department or licensing or certifying agency against any firefighter who has successfully completed the probationary period without providing the firefighter with an opportunity for administrative appeal." "Punitive action" is defined in the FFBOR as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (§ 3251, subd. (c).)

The FFBOR also provides the procedure for an administrative appeal of a punitive action, such as a written reprimand: "An administrative appeal instituted by a firefighter under this chapter shall be conducted in conformance with rules and procedures adopted by the employing department or licensing or certifying agency that are in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2." (§ 3254.5, subd. (a).) Section 11500 et seq. is part of the Administrative Procedure Act (Gov. Code, § 11340 et seq.) and generally governs administrative hearings. (§ 11370; *Lake v. Reed* (1997) 16 Cal.4th 448, 458 [65 Cal.Rptr.2d 860, 940 P.2d 311].)

Section 11502, subdivision (a) of part 1 of division 3 of title 2 provides in part, "All hearings of state agencies required to be conducted under this chapter shall be conducted by administrative law judges on the staff of the Office of Administrative Hearings." An alternative is provided by subdivision (b) of section 3254.5, a recent amendment to section 3254.5 (Stats. 2010, ch. 465, § 1) that provides in part, "Notwithstanding subdivision (a) [of section 3254.5], if the employing department is subject to a memorandum of understanding that provides for binding arbitration of administrative appeals, the arbitrator or arbitration panel shall serve as the hearing officer in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 and notwithstanding any other provision that hearing officer's decision shall be binding."

## III. FACTUAL BACKGROUND

The City is a charter city under California Constitution, article XI, section 5, subdivision (a).[3] The Union is a recognized employee organization that represents the City's firefighters. The parties entered into a collective bargaining agreement, known as the memorandum of agreement (MOA), which covered the period of March 1, 2004, to June 30, 2009.

The labor dispute in this case arises from article 44 of the MOA, entitled "Separability," which provides in pertinent part, "Notwithstanding any other provisions of this Agreement to the contrary, . . . should . . . any applicable State or Federal law or regulation . . . impose additional obligations on the City, the parties shall meet and confer or negotiate on the Article or subsections thereof affected. If they are unable to come to an agreement on the matter, the provisions of Section 1111 of the Charter shall apply. All other provisions of this Agreement not affected shall continue in full force and effect." (Some capitalization omitted.)

Section 1111 of the San Jose City Charter provides in pertinent part, "The City, through its duly authorized representatives, shall negotiate in good faith with the recognized fire and police department employee organizations on all matters relating to the wages, hours, and other terms and conditions of City employment, including the establishment of procedures for the resolution of grievances submitted by either employee organization over the interpretation or application of any negotiated agreement including a provision for binding arbitration of those grievances. . . . [¶] All disputes or controversies pertaining to wages, hours, or terms and conditions of employment which remain unresolved after good faith negotiations between the City and either the fire or police department employee organization shall be submitted to a three-member Board of Arbitrators upon the declaration of an impasse by the City or by the recognized employee organization involved in the dispute." (San Jose City Charter (as amended through 2004), art. XI, § 1111.)

In a letter to the City's director of employee relations, dated April 3, 2008, the Union requested the City to meet and confer regarding the implementation of the FFBOR. The letter stated, "As you are aware, AB 220, the

---

[3] California Constitution, article XI, section 5, subdivision (a) provides, "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith." Thus, "[a] charter city is constitutionally entitled to exercise exclusive authority over all matters deemed to be 'municipal affairs.' (Cal. Const., art. XI, § 5.) In such cases, the city charter supersedes conflicting state law." (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 783 [38 Cal.Rptr.2d 699, 889 P.2d 1019].)

[Firefighters] Procedural Bill of Rights Act became effective January 1, 2008. [¶] Local 230 would like to meet and confer with the City of San Jose concerning the implementation of the FFBOR. Accordingly, please contact [the undersigned] as soon as practicable to set a date, time and place to begin discussions."

The City refused the Union's request to meet and confer in a letter from the director of employee relations to the Union dated August 4, 2008: "I have received your letter dated April 3, 2008, which stated your request to meet and confer regarding the implementation of the Firefighters Procedural Bill of Rights . . . . The City does not believe that any implementation of this state law is subject to the meet and confer process."

After the City refused to meet and confer regarding the FFBOR, the Union initiated proceedings in the trial court.

## IV. PROCEDURAL BACKGROUND

### A. *The Union's Petition*

On January 30, 2009, the Union filed a verified "petition for writ of mandate, prohibition or other appropriate relief and petition to compel arbitration." (Capitalization omitted.)

In its petition, the Union asserted that the FFBOR applies to any California city that provides firefighting services and gives "enhanced employment rights not generally available to other public employees, including the right to an administrative appeal following a written reprimand. ([§] 3254, [subd.] (b) and § 3254.5)." The Union also asserted that under section 3254.5 of the FFBOR, "[a]n administrative appeal instituted by a firefighter in response to punitive action must be conducted in conformance with the rules and procedures adopted by the employing department that are in accordance with the Administrative Procedures Act [§] 11500, et seq." Further, the Union stated, "[t]his new procedure presents the need for the development of appropriate procedural protocol."

Since the City had refused to meet and confer regarding the implementation of the FFBOR, the Union asserted that the City was required by San Jose City Charter section 1111 and article 44 of the MOA to submit the dispute to arbitration. In its points and authorities in support of the petition, the Union explained that a dispute regarding the interpretation and application of the MOA, such as the parties' dispute as to whether article 44 of the MOA requires the parties to bargain over the implementation of the FFBOR, must be submitted to arbitration under the terms of article 44 and section 1111. The

Union also stated in its petition that the City had refused the Union's demand that it submit the matter to arbitration, and therefore the Union sought an order compelling the City to arbitrate.

## B. *The City's Opposition to the Petition*

The City opposed the Union's petition on several grounds. First, the City contended that the provisions of FFBOR that authorize administrative appeals for punitive actions did not apply to the City because the FFBOR cannot preempt the existing ordinances and policies of a charter city. Alternatively, the City asserted that even assuming the trial court determined that the disputed provisions of the FFBOR applied to the City, PERB had jurisdiction to determine whether the parties were required to meet and confer.

The City also argued that arbitration of the dispute would not be appropriate because the MOA requires the parties to meet and confer and reach an impasse as a prerequisite to arbitration, and that prerequisite had not been satisfied. Additionally, the City claimed that the parties' dispute was not covered by the grievance and arbitration provisions of the MOA since the dispute concerned the threshold legal issue of the applicability of the FFBOR, rather than its implementation.

Finally, the City sought an award of attorney's fees and costs pursuant to the MOA.

## C. *The City's Motion for Judgment on the Pleadings*

The City filed a motion for judgment on the pleadings, in which it sought an order denying the Union's petition. The City argued that its motion was appropriate because the petition presented the purely legal issue of whether the City may be compelled to implement the provisions of the FFBOR that conflicted with the City's existing procedures for appeals of firefighter discipline, in light of the City's status as a charter city.

In support of its motion, the City asserted that the FFBOR appeared to require formal hearings before administrative law judges for all levels of punitive action, including a written reprimand. According to the City, the FFBOR's requirement that an administrative law judge hear appeals of all levels of firefighter discipline conflicts with the City's existing procedures, which limit appeals of written reprimands and documented oral counseling to the level of city manager and provide that all other firefighter discipline may be appealed to the City's civil service commission.

Relying on *Johnson v. Bradley* (1992) 4 Cal.4th 389 [14 Cal.Rptr.2d 470, 841 P.2d 990] (*Johnson*), the City argued that under home rule provision of

California Constitution, article XI, section 5, laws enacted by charter cities prevail over conflicting state laws, with only two exceptions: either the state law implicates a matter of statewide concern or it is "narrowly tailored to limit incursion into legitimate municipal interests." The City further argued that the FFBOR did not preempt the City's procedure for appeals of firefighter discipline because the FFBOR's requirement that all administrative appeals be heard by administrative law judges was not narrowly tailored to address any statewide concern regarding due process in administrative appeals of firefighter disciplinary matters.

### D. *The Union's Opposition to the Motion for Judgment on the Pleadings*

The Union opposed the motion for judgment on the pleadings on two grounds. First, the Union contended that article 44 of the MOA requires an arbitrator, not the court, to decide the legal issue of whether the FFBOR imposes additional obligations on the City that require bargaining. Second, the Union rejected the City's claim that the home rule provisions of California Constitution, article XI, section 5, precluded application of the FFBOR to the City. The Union's view was that the FFBOR preempted municipal law because the statute was narrowly tailored and impinged only minimally on the City's municipal interests, since the FFBOR would allow the City to "provide administrative procedures other than a hearing before an administrative law judge for certain levels of discipline such as letters of reprimand." (Fn. omitted.)

### E. *The Trial Court's First Order*

In its July 27, 2009 order, the trial court denied the City's motion for judgment on the pleadings and requested further briefing with respect to the Union's petition to compel arbitration.

As to the motion for judgment on the pleadings, the trial court determined that the motion lacked merit because the "Union's petition alleges the existence of a written agreement to arbitrate a controversy and . . . the City refuses to arbitrate such a controversy. These allegations are sufficient to state a petition to compel arbitration. (See [Code Civ. Proc.,] § 1281.2.)" The court further determined that the petition could be construed to adequately plead a claim for declaratory relief, because the petition sought a determination of the parties' rights under the MOA.

Regarding the merits of the petition to compel arbitration, the trial court found that the FFBOR applied to the City because its provisions, including the provision for administrative appeals set forth in section 3254.5, could be

construed not to deprive the City of the right to manage and control its fire department. However, the court determined that a question remained as to whether PERB had exclusive jurisdiction to determine the City's obligation to meet and confer concerning the implementation of the FFBOR.

The trial court therefore requested further briefing on four issues: "(1) whether Union's petition alleges a violation of the MMBA or of any rule or regulation adopted by City pursuant to section 3507 or 3507.5; (2) whether Union can still compel arbitration under an MOA that expired, by its terms, on June 30, 2009; (3) whether City's refusal to meet and confer relieves Union of the burden of establishing that the parties met and conferred in good faith and there has been a declaration of an impasse; and (4) assuming, arguendo, that Union proves entitlement to arbitration, whether the arbitrator should merely be asked to decide whether the parties are required to meet and confer concerning the implementation of section 3254.5 or whether the arbitrator should be asked to decide how to implement section 3254.5."

### F. The Parties' Further Briefing

In its further briefing, the City responded to the issues posed by the trial court as follows: (1) even though its refusal to meet and confer regarding the FFBOR was justified, refusal to meet and confer in good faith is arguably a violation of the MMBA that falls within the exclusive initial jurisdiction of PERB; (2) as to the expiration of the MOA on June 30, 2009, the parties were currently in negotiations regarding a new MOA and therefore arbitration with respect to the expired MOA would be pointless; (3) the Union was not relieved of its burden to establish that the parties had met and conferred and there was a declaration of impasse, since there had been no determination that the City was obligated to meet and confer; and (4) the only question that could be presented to the arbitrator was whether the parties had an obligation to meet and confer regarding the implementation of section 3254.5 of the FFBOR.

The Union disagreed with the City's responses to the issues raised by the trial court. In its further briefing, the Union argued that (1) PERB did not have jurisdiction to hear a claim where, as here, the claim was that the memorandum of understanding had been breached; (2) arbitration was appropriate even though the MOA had expired, because the termination of a collective bargaining agreement does not extinguish a party's duty to arbitrate grievances under that agreement; (3) the City's refusal to meet and confer relieved the Union of the burden of establishing a declaration of impasse; and (4) only the arbitrator has the power to determine whether the parties have met and conferred, whether there has been a declaration of impasse, and whether any articles of the MOA are affected by the FFBOR.

### G. *The Trial Court's Second Order and Judgment*

On August 27, 2009, the trial court issued its order denying the Union's petition to compel arbitration. The court reasoned that "[a]lthough the petition does not explicitly allege a violation of the [MMBA], at the pleading stage, where the only question is PERB's jurisdiction, what matters is whether the underlying conduct [o]n which the suit is based—however described in the complaint—may fall within PERB's exclusive jurisdiction. Thus, a party, through artful pleading, may not evade PERB's exclusive jurisdiction. [Citation.] [¶] In this case the underlying conduct on which the suit is based is [the City's] refusal to meet and confer over the implementation of the [FFBOR], and, in particular, [section] 3254.5, which provides firefighters with the right to an administrative appeal following a written reprimand. This conduct may constitute a violation of the MMBA, for example, [section] 3305. The Court therefore concludes that PERB has exclusive jurisdiction."

The trial court also denied the Union's petition on two alternative grounds. The court determined that the petition was moot, "given the circumstances that the alleged violation concerns failure to meet and confer over implementation of a new statutory provision into an expired MOA while the parties are negotiating the terms of a new MOA." Additionally, the court found that the Union had not been relieved of its burden to establish, as a prerequisite to arbitration, that the parties had met and conferred in good faith and there was a declaration of impasse. The court stated, "Where, as here, the dispute concerns whether there is a duty to meet and confer, it would not be logical to find that the parties met and conferred in good faith and there was a declaration of impasse and then submit the question of duty to meet and confer to arbitration."

Judgment on the order denying the City's motion for judgment on the pleadings and the order denying the Union's petition was entered on November 5, 2009. The Union filed a timely notice of appeal from the judgment as a whole, which we construe as seeking review of the portion of the judgment denying its petition.[4] The City also filed a timely notice of appeal, specifying that it was seeking review of the portion of the judgment denying its motion for judgment on the pleadings.

Thereafter, the City filed a postjudgment motion for attorney's fees and costs, which the Union opposed. On February 23, 2010, the trial court issued

---

[4] " '[I]t is and has been the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' [Citations.]" (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1249 [115 Cal.Rptr.3d 203].)

This court granted the application of the International Association of Firefighters to file an amicus curiae brief in support of the Union.

its order granting the motion and awarding the City, as the prevailing party, attorney's fees of $24,745 and costs of $390. The Union timely filed a notice of appeal from the postjudgment order.

## V. DISCUSSION

### A. *Mootness*

The City raises the threshold issue of mootness with regard to the Union's appellate challenge to the order denying the Union's petition for a writ of mandate and to compel arbitration. According to the City, because the MOA expired on June 30, 2009, the provisions of the MOA allegedly affected by the FFBOR are no longer in effect and therefore arbitration of the City's obligation to meet and confer regarding those expired provisions would be meaningless. The City also argues that the parties' ongoing negotiations regarding a new MOA obviate the need to meet and confer regarding the terms of an expired MOA.

Relying on *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989 [116 Cal.Rptr.3d 480, 239 P.3d 1186] (*Professional Engineers*), the Union responds that its petition is not moot because the parties are required to maintain the status quo under the expired collective bargaining agreement while they are bargaining over a new agreement. Alternatively, the Union argues that because it is asserting that the City breached the parties' contract, and the City may attempt to insert the contractual provisions at issue into the new contract, expiration of the contract does not render the issue moot.

We find that the Union's appeal is not moot. As the Union points out, the California Supreme Court in *Professional Engineers* instructed that an employer is required to maintain the status quo after expiration of a collective bargaining agreement: "Under the provisions of the National Labor Relations Act governing the collective bargaining process in the private sector (29 U.S.C. § 158 et seq.) and under the provisions of the California statutory schemes governing the collective bargaining or meet-and-confer process between local governments and their employees (§§ 3500–3510 [MMBA]) . . . , when a collective bargaining agreement or MOU expires the parties generally are required to maintain the status quo under the terms and conditions of the expired agreement during the period in which the parties continue to bargain in good faith on a new agreement . . . . [Citation.]" (*Professional Engineers, supra*, 50 Cal.4th at p. 1018, fn. 19; see also *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 188 [6 Cal.Rptr.2d 714]; *San Joaquin County Employees Assn. v. City of Stockton* (1984) 161 Cal.App.3d 813, 818–819 [207 Cal.Rptr. 876].)

Thus, *Professional Engineers* requires the City and the Union to maintain the status quo under the terms and conditions of the MOA that expired in 2009 while bargaining over a new MOA. The issue of whether the City is obligated to meet and confer regarding the FFBOR is accordingly not moot, since under article 44 of the expired MOA the question remains as to whether the FFBOR currently imposes additional obligations on the City with respect to firefighter disciplinary proceedings that are subject to bargaining.

### B. *The City's Cross-appeal*

Since the City's cross-appeal raises the crucial legal issue of whether the FFBOR applies to the City despite its status as a charter city, we will address the merits of the cross-appeal before we consider the Union's appeals. In its cross-appeal, the City challenges the trial court's order denying its motion for judgment on the pleadings. From our review of the motion, we understand the City to argue that because the home rule provisions of California Constitution, article XI, section 5, preclude the application of the FFBOR to the City's procedures for firefighter discipline as a matter of law, the City has no obligation to meet and confer regarding the implementation of the FFBOR and for that reason it cannot be compelled to arbitrate the FFBOR issue. Our analysis begins with the standard of review.

### 1. *Standard of Review*

A motion for judgment on the pleadings is analogous to a general demurrer, but is made after the time to file a demurrer has expired. (Code Civ. Proc., § 438, subd. (f)(2); *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 602 [98 Cal.Rptr.2d 277].) The trial court's judgment on the order granting a motion for judgment on the pleadings is reviewed independently under the de novo standard of review. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515 [101 Cal.Rptr.2d 470, 12 P.3d 720].) "[W]e treat the properly pleaded allegations of [the] complaint as true, and also consider those matters subject to judicial notice. [Citations.] 'Moreover, the allegations must be liberally construed with a view to attaining substantial justice among the parties.' [Citation.] 'Our primary task is to determine whether the facts alleged provide the basis for a cause of action against defendants under any theory.' [Citation.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232 [44 Cal.Rptr.2d 352, 900 P.2d 601]; see Code Civ. Proc., § 452.)

For purposes of the City's cross-appeal, we will assume, without deciding, that a petition to compel arbitration constitutes a "complaint" within the meaning of Code of Civil Procedure section 438, the statute governing motions for judgment on the pleadings, and therefore the petition may be

subject to a motion for judgment on the pleadings. We will independently determine the merits of the City's contentions that (1) the home rule provisions of California Constitution, article XI, section 5, preclude application of the FFBOR to the City as a matter of law; and (2) the City's motion for judgment on the pleadings should be granted because the City has no obligation to meet and confer regarding the implementation of the FFBOR.

### 2. The Home Rule Doctrine

As we will discuss, whether the FFBOR applies to the City turns on the home rule doctrine. The California Constitution sets forth the home rule doctrine, which gives the chartered cities the power to " 'make and enforce all ordinances and regulations in respect to municipal affairs, subject only to [the] restrictions and limitations provided in their several charters . . . .' (Cal. Const., art. XI, § 5, subd. (a).)" (*Baggett, supra,* 32 Cal.3d at pp. 135–136.) However, a well-established exception to the home rule doctrine involves general laws of statewide concern. A general law " 'prevails over local enactments of a chartered city, even in regard to matters which would otherwise be deemed to be strictly municipal affairs, where the subject matter of the general law is of statewide concern.' [Citation.]" (*Seal Beach, supra,* 36 Cal.3d at p. 600.) Thus, "general laws seeking to accomplish an objective of statewide concern may prevail over conflicting local regulations even if they impinge to a limited extent upon some phase of local control. [Citation.]" (*Baggett, supra,* 32 Cal.3d at p. 139; see *County of Riverside v. Superior Court, supra,* 30 Cal.4th at p. 287.)

### 3. The Parties' Contentions

The City argues that under the home rule provisions of the California Constitution, application of the FFBOR to the City is unconstitutional because the FFBOR is not narrowly tailored to avoid impinging on local control. According to the City, compelling it to implement the FFBOR's procedures for appeals of firefighter discipline would "essentially take away the City's jurisdiction over the process for removal and discipline of its employees."

· The City's home rule argument is based on its contentions that (1) section 3254.5[5] of the FFBOR appears to require appeals from all levels of firefighter

---

[5] Section 3254.5 provides, "(a) An administrative appeal instituted by a firefighter under this chapter shall be conducted in conformance with rules and procedures adopted by the employing department or licensing or certifying agency that are in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2. [¶] (b) Notwithstanding subdivision (a), if the employing department is subject to a memorandum of understanding that provides for binding arbitration of administrative appeals, the arbitrator or arbitration panel

discipline, including informal written reprimands, to be conducted under the formal hearing provisions of the Administrative Procedure Act (§ 11500 et seq.); (2) the formal hearing provisions of the Administrative Procedure Act require a "full-blown evidentiary proceeding" before an administrative law judge for appeals of all levels of firefighter discipline; and (3) the onerous and burdensome requirement of an evidentiary hearing before an administrative law judge is unnecessary to satisfy due process in firefighter disciplinary appeals and also conflicts with the City's existing procedures for appeals of firefighter discipline.

Describing its existing procedures, the City states that "a firefighter may appeal a letter of reprimand through three levels of review, culminating in an appeal to the City Manager. [¶] If faced with formal disciplinary charges, firefighters have options in how to challenge those charges: they may either appeal to the City's Civil Service Commission or they may utilize the MOA's dispute-resolution provisions which can culminate in an arbitration hearing." The City emphasizes that the "key difference" between its procedures and the hearing procedures provided by the Administrative Procedure Act under section 3254.5 of the FFBOR is that the City's hearing procedures do not require an administrative law judge. The other differences asserted by the City include the Administrative Procedure Act's provisions for "formal pre-hearing discovery," "pre-hearing motion practice," and "settlement conferences." Requiring the City to implement these conflicting procedures of the Administrative Procedure Act pursuant to section 3254.5 of the FFBOR would, in the City's view, deprive it of the ability to control its firefighter disciplinary procedures and thereby usurp its home rule authority.

The Union disagrees with the City's contention that implementation of section 3254.5 of the FFBOR would violate the home rule doctrine because the statute is not narrowly tailored to avoid impinging on local control. Relying on the decisions in *Baggett, supra,* 32 Cal.3d 128, and *County of Riverside, supra,* 30 Cal.4th 278, the Union asserts that the FFBOR is limited to imposing procedural requirements on firefighter disciplinary proceedings and does not impinge on the City's ultimate power to discipline its employees.

In reply, the City insists that the "onerous requirements" of the Administrative Procedure Act (§ 11500 et seq.) are not merely procedural

shall serve as the hearing officer in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 and notwithstanding any other provision that hearing officer's decision shall be binding. However, a memorandum of understanding negotiated with an employing agency shall not control the process for administrative appeals instituted with licensing or certifying agencies. Any administrative appeal instituted with licensing or certifying agencies shall adhere to the requirements prescribed in subdivision (a)."

because the City would be required to use a state-appointed administrative law judge instead of its civil service commission for all contested disciplinary hearings, and the City would not be required to ratify the administrative law judge's decision before it became final. The City claims that implementing these procedures in accordance with the FFBOR would cause the City to lose its ultimate decisionmaking power over firefighter discipline.

Although the City acknowledges that section 3254.5, subdivision (b) of the FFBOR was recently amended (Stats. 2010, ch. 465, § 1) to provide that an arbitrator may serve as the hearing officer where, as here, "the employing department is subject to a memorandum of understanding that provides for binding arbitration of administrative appeals," the City denies that the amendment renders section 3254.5 of the FFBOR constitutional as applied to a charter city. The City's position is that compliance with section 3254.5 would cause the City to either "eliminate firefighter appeals to the civil service commission entirely and rely solely on arbitrators, or be forced to utilize [administrative law judges] as hearing officers at any Commission hearings. This is exactly the type of usurpation of local authority that the Courts have deemed not to apply to charter cities."

### 4. Analysis

We determine that the California Supreme Court's decisions in *Baggett* and *County of Riverside* compel a finding that section 3254.5 of the FFBOR applies to the City. In *Baggett*, the issue was whether the Public Safety Officers Procedural Bill of Rights Act (§§ 3300–3311; POBRA) applies to charter cities. (*Baggett, supra*, 32 Cal.3d at p. 131.) The plaintiffs were City of Los Angeles police officers who had been reassigned to lower paying positions after a police department investigation concluded that their performance was negligent and unsatisfactory. (*Id.* at pp. 133–134.) The police officers filed a petition for writ of mandate and complaint for declaratory relief, contending that they had not been afforded an administrative appeal of a punitive action as provided by section 3304, subdivision (b)[6] of the POBRA. The City of Los Angeles, a charter city, argued that the POBRA violated the home rule provision of California Constitution, article XI, section 5, subdivision (b).

The California Supreme Court in *Baggett* determined that "the applicability of the [POBRA] to charter cities turns on whether the matters it

---

[6] Section 3304, subdivision (b) provides, "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal."

addresses are of statewide concern or are 'strictly' a municipal affair. [Citation.]" (*Baggett, supra,* 32 Cal.3d at p. 136.) The court further determined that "[a]lthough what constitutes a matter of statewide concern is ultimately an issue for the courts to decide, it is well settled that this court will accord 'great weight' to the Legislature's evaluation of this question. [Citation.] Therefore, it is significant that the Legislature has expressly declared that 'the rights and protections provided to peace officers [by the POBRA] constitute a matter of statewide concern.' (§ 3301.)" (*Ibid.,* fn. omitted.) A further indication was that "it can hardly be disputed that the maintenance of stable employment relations between police officers and their employers is a matter of statewide concern." (*Id.* at pp. 139–140.)

Additionally, although the *Baggett* court found that the POBRA impinged on the City of Los Angeles's "implied power to determine the manner in which its employees may be removed," the impingement was not sufficient to render the POBRA unconstitutional. (*Baggett, supra,* 32 Cal.3d at p. 138.) The court stated, "General laws seeking to assure fair labor practices may be applied to police departments, just as they may be applied to fire departments, even though they impinge upon local control to a limited extent. [Citations.]" (*Id.* at p. 139.) With regard to the POBRA, the court found that "the total effect of this legislation is not to deprive local governments of the right to manage and control their police departments but to secure basic rights and protections to a segment of public employees who were thought unable to secure them for themselves." (*Id.* at p. 140.)

▮ Finally, the *Baggett* court concluded, "There must always be doubt whether a matter which is of concern to both municipalities and the state is of sufficient statewide concern to justify a new legislative intrusion into an area traditionally regarded as 'strictly a municipal affair.' Such doubt, however, 'must be resolved in favor of the legislative authority of the state.' [Citation.]" (*Baggett, supra,* 32 Cal.3d at p. 140.)

More recently, the California Supreme Court in *County of Riverside* considered the constitutionality of Code of Civil Procedure former section 1299, which provided that a union representing public safety employees could declare an impasse in labor negotiations and require a local agency to submit unresolved economic issues to binding arbitration. (*County of Riverside, supra,* 30 Cal.4th at p. 282.) The court determined that Code of Civil Procedure former section 1299 compelled the County of Riverside "to enter into mandatory arbitration with unions representing its employees, with the potential result that the arbitration panel determines employee compensation." (*County of Riverside, supra,* 30 Cal.4th at p. 285.) The County of Riverside was thereby deprived of its home rule authority under article XI, section 1, subdivision (a) of the California Constitution to set the compensation of public safety employees. (*County of Riverside, supra,* 30 Cal.4th at

p. 290.) The court also determined that Code of Civil Procedure former section 1299 violated another constitutional home rule provision, article XI, section 11, subdivision (a) of the California Constitution, by delegating to a private body the power to determine compensation for county employees. (*County of Riverside, supra*, 30 Cal.4th at p. 291.)

Distinguishing its prior decision in *Baggett*, our Supreme Court stated that *Baggett* had found the POBRA to be constitutional because the POBRA was limited to "providing procedural safeguards" and did not interfere with " 'the setting of peace officers' compensation.' [Citation.]" (*County of Riverside, supra*, 30 Cal.4th at p. 288.) The court stated, "We have 'emphasize[d] that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. . . .' [Citation.]" (*Id.* at p. 289.)

■ The California Supreme Court in *County of Riverside* also cited with approval its decision in *Seal Beach, supra*, 36 Cal.3d 591. The issue in *Seal Beach* was whether the city council of a charter city was required to comply with the meet and confer requirements of the MMBA (§ 3500 et seq.). (*Seal Beach, supra*, 36 Cal.3d at p. 594.) In determining that the city was required to meet and confer under the MMBA, the court stated, "We emphasize that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. Thus there is no question that 'salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws.' [Citation.] Nevertheless, the process by which salaries are fixed is obviously a matter of statewide concern and none could, at this late stage, argue that a charter city need not meet and confer concerning its salary structure." (*Id.* at p. 600, fn. 11.)

The distinction between a state law imposing procedural requirements and one · that implicates the substance of a public employee labor issue was subsequently addressed in *Dimon v. City of Los Angeles* (2008) 166 Cal.App.4th 1276 [83 Cal.Rptr.3d 576] (*Dimon*). The issue in *Dimon* was whether the City of Los Angeles had violated provisions of the Labor Code prescribing meal periods and the wages to be paid for missed meal periods. (*Dimon, supra*, 166 Cal.App.4th at pp. 1279–1280.) The *Dimon* court determined that the Labor Code provisions governing meal periods could not be applied to the City of Los Angeles under the home rule doctrine because the provisions were substantive. "A procedural (state) law leaves the ultimate decision making authority about employee compensation, job qualifications, or reasons to terminate in the hands of the charter county and thus can be applied to it. [Citation.]" (*Id.* at pp. 1289–1290.) "A substantive law, on the other hand, takes away a charter county's ability to establish local salaries and control working conditions. [Citation.]" (*Id.* at p. 1290.) Because the

Labor Code provisions governing meal periods "would divest the County of its ability to provide for and regulate meal periods," the court determined that "applying the statutes to the County would impinge to more than a limited extent on its authority as a charter county." (*Ibid.*)

Thus, to determine whether section 3254.5 of the FFBOR may be applied to the City without violating the home rule provisions of California Constitution, article XI, section 5, we first inquire as to whether section 3254.5 addresses matters of statewide concern or strictly municipal affairs. (*Baggett, supra,* 32 Cal.3d at p. 136.) In general, labor relations with public employees, including firefighters, are a matter of statewide concern. (*Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276, 294–295 [32 Cal.Rptr. 830, 384 P.2d 158] (*Professional Fire Fighters*).) We also accord great weight to the Legislature's findings that the FFBOR addresses a matter of statewide concern. (*Baggett, supra,* 32 Cal.3d at p. 136; *County of Riverside, supra,* 30 Cal.4th at p. 286.) Section 1, subdivision (f) of the introductory material to Assembly Bill No. 220 (2007–2008 Reg. Sess.) states, "It is necessary that this act be applicable to all firefighters . . . wherever situated within the State of California, in order to ensure that stable employment relations are continued throughout the state, and to further ensure that effective services are provided to all people of the state." (Stats. 2007, ch. 591, § 1.) Therefore, we determine that section 3254.5 of the FFBOR addresses a matter of statewide concern.

However, our finding that section 3254.5 of the FFBOR addresses a matter of statewide concern does not end our inquiry. We must also determine whether the FFBOR impinges beyond a "limited extent" on the City's local control of firefighter discipline. (*Baggett, supra,* 32 Cal.3d at p. 139; see *County of Riverside, supra,* 30 Cal.4th at p. 287.) In that regard, we examine section 3254.5 to determine whether it is procedural or substantive. (*County of Riverside, supra,* 30 Cal.4th at pp. 288–289.)

Having carefully examined section 3254.5, we believe that the plain language of the statute demonstrates that the Legislature intended to impose procedural requirements. Subdivision (a) of section 3254.5 provides, "An administrative appeal instituted by a firefighter under this chapter shall be conducted in conformance with rules and procedures adopted by the employing department or licensing or certifying agency that are in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2." Section 11500 et seq. is part of the Administrative Procedure Act and includes the provisions that generally govern administrative hearings. (§ 11370; *Lake v. Reed, supra,* 16 Cal.4th at p. 458.) Thus, by its own terms section 3254.5 imposes procedural requirements for administrative appeals of firefighter discipline.

The legislative history pertaining to section 3254.5 reinforces our determination that the FFBOR was intended to govern the procedure for administrative appeals of firefighter discipline. Prior to the enactment of the FFBOR, the Assembly's bill analysis stated that the FFBOR would specify "that an administrative appeal by a firefighter will be conducted in conformance with the rules and procedures adopted by the local agency consistent with the Administrative Procedures Act." (Assem. Floor Analysis, Conc. Sen. Amends. to Assem. Bill No. 220 (2007–2008 Reg. Sess.) as amended July 2, 2007, p. 2.)

Section 3254.5 was subsequently amended to provide for the use of arbitrators in administrative appeals. Enacted in 2010, subdivision (b) of section 3254.5 provides in part, "Notwithstanding subdivision (a), if the employing department is subject to a memorandum of understanding that provides for binding arbitration of administrative appeals, the arbitrator or arbitration panel shall serve as the hearing officer in accordance with Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 and notwithstanding any other provision that hearing officer's decision shall be binding." (Stats. 2010, ch. 465, § 1.)

The legislative history for Assembly Bill No. 2331 (2009–2010 Reg. Sess.) indicates the Legislature's intent in amending section 3254.5: "According to the sponsor of the bill, the California Professional Firefighters, 'Now that the [FFBOR] has been in effect for a few years, firefighter organizations and their employers are realizing that the current application of the law may not clearly provide for an alternative, collectively-bargained appeals procedure. With that, it's evident that the provisions of the [FFBOR] governing the administrative appeals process are in need of clarification—specifically, with respect to those jurisdictions that have effectively mitigated past appeals through a locally-adopted grievance arbitration procedure. Rather than strapping these jurisdictions with the hefty cost of revamping their appeals process to conform with the Office of Administrative Law rules under the [Administrative Procedure Act]—costs that in many cases would be prohibitive given the current economic climate—there is a need to enable jurisdictions to utilize their existing, effective grievance arbitration appeals process as an acceptable alternative to the APA process.['] [¶] In enacting [Assembly Bill No.] 220, the Legislature intended to establish procedures that would protect the due process rights of firefighters in administrative appeals. However, as noted by the sponsor, at the time [Assembly Bill No.] 220 went into effect, many firefighter organizations already had collectively bargained for alternative grievance arbitration procedures. As currently written, the [FFBOR] does not clearly provide for such an alternative established in a MOU. This bill would allow an arbitrator or arbitration panel to serve as the hearing officer, rather than the administrative law judge, if a current MOU provides for binding

arbitration of appeals." (Assem. Floor Analysis, Conc. Sen. Amends. to Assem. Bill No. 2331 (2009–2010 Reg. Sess.) as amended Aug. 20, 2010, pp. 2–3.)

■ Therefore, based on the language of section 3254.5 and its legislative history, we find that section 3254.5 was intended to provide "procedural safeguards" with respect to administrative appeals of firefighter discipline. (*County of Riverside, supra,* 30 Cal.4th at p. 288.) The statute does not establish standards for firefighter discipline or otherwise control the terms and conditions of firefighter discipline. (*Ibid.*) As in *Professional Fire Fighters,* the effect of section 3254.5 is "not to deprive local government (chartered city or otherwise) of the right to manage and control its fire departments but to create uniform fair labor practices throughout the state." (*Professional Fire Fighters, supra,* 60 Cal.2d at pp. 294–295.)

The City maintains, however, that section 3254.5 greatly impinges on its local control of firefighter discipline as a charter city because section 3254.5 requires the onerous and burdensome use of administrative law judges for all levels of firefighter discipline, including written reprimands. The City also rejects any suggestion that the provision of subdivision (b) of section 3254.5 authorizing the use of arbitrators, where provided by the parties' collective bargaining agreement and agreed to by the union,[7] alleviates section 3254.5's administrative law judge requirement.

■ The City's arguments do not convince us that implementation of the provisions of section 3254.5 will result in the City's loss of its ultimate decisionmaking authority over firefighter disciplinary matters. Even assuming that section 3254.5 imposes an onerous and burdensome procedure for administrative appeals of firefighter discipline, the statute does not control the standards, terms, or conditions for firefighter discipline and therefore does not violate the home rule provisions of California Constitution, article XI, section 5.

The decisions on which the City relies, including *Johnson, supra,* 4 Cal.4th 389, *James v. City of Coronado* (2003) 106 Cal.App.4th 905 [131 Cal.Rptr.2d 85] (*James*), and *Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438 [277 Cal.Rptr. 478] (*Stanton*) do not compel a different conclusion.

In *Johnson,* the issue was the validity of "a campaign reform measure adopted by the voters of the City of Los Angeles to the extent the measure provides for the partial public funding of campaigns for city elective offices."

---

[7] Article 20.8 of the MOA effective March 1, 2004, to June 30, 2009, provides that a firefighter has the option of appealing a disciplinary matter, other than a letter of reprimand, to binding arbitration upon agreement by the Union.

(*Johnson, supra*, 4 Cal.4th at p. 392.) The California Supreme Court determined that the local campaign financing measure prevailed over a conflicting state law banning public funding of political campaigns (§ 85300), under the home rule provisions of California Constitution, article XI, section 5. The court reasoned that the ban on public funding was "not reasonably related to the statewide concern of enhancing the integrity of the electoral process." (*Johnson, supra*, at pp. 410–411.) Since *Johnson* does not involve a labor relations issue, it is clearly distinguishable from the case at bar.

The City argues that *Johnson* stands for the proposition that a statute violates the home rule provisions of the California Constitution where the statute "is not narrowly tailored to address its stated purpose." Applying this test, the City urges that section 3254.5 of the FFBOR is not narrowly tailored to provide firefighters with the same procedural rights afforded to police officers under the POBRA because the FFBOR "grants firefighters procedural rights that far exceed what police officers receive and what is constitutionally mandated to ensure due process."

Even assuming that application of a "narrowly tailored" test is appropriate for a determination of whether section 3254.5 of the FFBOR violates the home rule provisions of the California Constitution, we find that section 3254.5 is narrowly tailored to "limit incursion into legitimate municipal interests." (*Johnson, supra*, 4 Cal.4th at p. 404.) As stated by amicus curiae, "[b]ecause the FFBOR is procedural in nature and deals only in scope with the statewide concern of stable employment relations, it is narrowly-tailored to limit incursion into the City's municipal interests."

Unlike *Johnson*, the decisions in *James* and *Stanton* do involve labor relations issues, but those decisions are also distinguishable. In *James*, two police officers sought to compel the City of Coronado to provide the right to confront and cross-examine witnesses in an evidentiary hearing in which they challenged memoranda placed in their personnel files for use in performance reviews. (*James, supra*, 106 Cal.App.4th at pp. 907–908.) The appellate court determined that because the city had not formulated the provisions for an administrative appeal under the POBRA, section 3304, subdivision (b), the sole issue on appeal was whether due process required the right to confront and cross-examine witnesses. (*James*, at p. 910.) Finding that the police officers had not suffered any adverse consequences, the court concluded that "the full panoply of judicial procedures," including the right to confront and cross-examine witnesses, was not required. (*Id.* at p. 913.) The decision did not address the home rule provisions of the California Constitution and therefore does not support the City's position.

The issue in *Stanton* was whether a city's administrative appeals process violated either the right to due process or the POBRA's requirements for an

administrative appeal in a case involving a police officer's challenge to a written reprimand. (*Stanton, supra*, 226 Cal.App.3d at p. 1440.) The appellate court, noting that section 3304, subdivision (b) of the POBRA requires a city to formulate the procedural details of an administrative appeal, found that an appeal to the chief of police satisfied the POBRA's requirement that no punitive action be taken without providing an administrative appeal and protected the police officer's procedural due process rights. (*Stanton, supra*, 226 Cal.3d. at pp. 1442–1443.) Again, the decision is distinguishable because no issue was raised as to the home rule provisions of the California Constitution.

Our resolution of the issue—whether section 3254.5 of the FFBOR may be applied to the City without violating the home rule provisions of California Constitution, article XI, section 5—is ultimately guided by the California Supreme Court's instruction in *Baggett* that "[t]here must always be doubt whether a matter which is of concern to both municipalities and the state is of sufficient statewide concern to justify a new legislative intrusion into an area traditionally regarded as 'strictly a municipal affair.' Such doubt, however, 'must be resolved in favor of the legislative authority of the state.' [Citation.]" (*Baggett, supra*, 32 Cal.3d at p. 140.) Because the language of section 3254.5 and its legislative history reflect the Legislature's intent to impose procedural requirements on administrative appeals of firefighter discipline, we must resolve any doubts in favor of finding that section 3254.5 is a procedural statute and, as such, may be applied to the City. For that reason, we conclude that the trial court did not err in denying the City's motion for judgment on the pleadings. However, we express no opinion as to any issues that may arise from the actual implementation of any provisions of the FFBOR imposing procedural requirements on administrative appeals of firefighter discipline.

### C. *The Union's Appeals*

### *The First Appeal—H035065*

#### 1. *The Parties' Contentions*

In its first appeal, the Union seeks reversal of the trial court's order denying its petition for a writ of mandate and to compel arbitration, arguing that the trial court erred in finding that PERB has exclusive jurisdiction over the Union's claim that the parties' MOA requires the City to meet and confer regarding the implementation of the FFBOR.

The Union explains that the City breached article 44 of the MOA[8] by refusing to meet and confer regarding the implementation of the FFBOR, and therefore it is entitled to seek a remedy for the City's breach of contract in the civil courts, pursuant to Labor Code section 1126. That section provides, "Any collective bargaining agreement between an employer and a labor organization shall be enforceable at law or in equity, and a breach of such collective bargaining agreement by any party thereto shall be subject to the same remedies, including injunctive relief, as are available on other contracts in the courts of this State." (Lab. Code, § 1126.)

Alternatively, the Union asserts that the civil courts and PERB have concurrent jurisdiction. The Union acknowledges that the MMBA was amended in 2000, when section 3509 was enacted, to give PERB exclusive initial jurisdiction over claims of MMBA violations. However, the Union contends the civil courts and PERB have concurrent jurisdiction because the Legislature did not amend section 3500,[9] which the Union describes as "the original MMBA provision preserving Labor Code section 1126."

The City, on the other hand, argues that "[m]eet and confer issues are exactly the type of issues that PERB was created to address." The City asserts that its refusal to meet and confer regarding the impact of the FFBOR on the existing procedures for firefighter disciplinary proceedings arguably constitutes an unfair labor practice under the MMBA, which is subject to PERB's exclusive initial jurisdiction pursuant to section 3509. As to the Union's claim

---

[8] Article 44 of the MOA, entitled "Separability," provides in pertinent part, "Notwithstanding any other provisions of this Agreement to the contrary, . . . should . . . any applicable State or Federal law or regulation . . . impose additional obligations on the City, the parties shall meet and confer or negotiate on the Article or subsections thereof affected. If they are unable to come to an agreement on the matter, the provisions of Section 1111 of the Charter shall apply. All other provisions of this Agreement not affected shall continue in full force and effect." (Some capitalization omitted.)

[9] Section 3500, subdivision (a) provides, "(a) It is the purpose of this chapter to promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations. It is also the purpose of this chapter to promote the improvement of personnel management and employer-employee relations within the various public agencies in the State of California by providing a uniform basis for recognizing the right of public employees to join organizations of their own choice and be represented by those organizations in their employment relationships with public agencies. Nothing contained herein shall be deemed to supersede the provisions of existing state law and the charters, ordinances, and rules of local public agencies that establish and regulate a merit or civil service system or which provide for other methods of administering employer-employee relations nor is it intended that this chapter be binding upon those public agencies that provide procedures for the administration of employer-employee relations in accordance with the provisions of this chapter. This chapter is intended, instead, to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed."

that Labor Code section 1126 provides concurrent civil court jurisdiction for a claim of breach of a collective bargaining agreement, even where the alleged breach constitutes an unfair labor practice under the MMBA, the City asserts that "[i]t would make no sense for there to be duplicative proceedings occurring simultaneously."

The City also reiterates its argument below that the trial court properly denied the Union's petition to compel arbitration because article 44 of the MOA requires the parties to meet and confer as a prerequisite to arbitration, and, since the parties have not satisfied that prerequisite, arbitration cannot be compelled at this time.

### 2. *Analysis*

#### *Standard of Review*

Since the issue of whether the Union's petition to compel arbitration was properly denied on jurisdictional grounds presents a "purely legal question," we will apply the independent standard of review. (*Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168, 176 [89 Cal.Rptr.3d 546].) Having conducted our independent review, for the reasons discussed below we determine that PERB has exclusive initial jurisdiction in this case and therefore the trial court properly denied the Union's petition to compel arbitration.

#### *PERB Jurisdiction*

■ Where, as here, the issue is whether the superior court or PERB has exclusive initial jurisdiction over a labor dispute, "what matters is whether the underlying conduct on which the suit is based—however described in the complaint—may fall within PERB's exclusive jurisdiction. [Citations.]" (*El Rancho Unified School Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 954, fn. 13 [192 Cal.Rptr. 123, 663 P.2d 893] (*El Rancho*).)

Section 3509 is the statute governing PERB's exclusive jurisdiction. Subdivision (b) of section 3509 provides in part, "A complaint alleging any violation of this chapter or of any rules and regulations adopted by a public agency pursuant to Section 3507 or 3507.5 shall be processed as an unfair practice charge by the board. The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board."

■ The general scope of PERB's exclusive jurisdiction has been described by the California Supreme Court as follows: "The administrative

agency authorized to adjudicate unfair labor practice charges under the MMBA is [PERB]. Subject to certain exceptions, local public agencies and their employees must exhaust their administrative remedies under the MMBA by applying to PERB for relief before they can ask a court to intervene in a labor dispute." (*Operating Engineers, supra*, 49 Cal.4th at p. 601.)

Thus, as this court has noted, "[g]enerally speaking, the PERB has exclusive initial jurisdiction over claims of unfair practices, as defined by the MMBA. [Citations.] For these purposes, unfair practice charges include not only claimed violations of the MMBA, but also claimed violations 'of any rules and regulations adopted by a public agency' under the MMBA. (§ 3509, subd. (b); see § 3507, subd. (d).) Where PERB has exclusive initial jurisdiction, the courts retain 'only appellate, as opposed to original, jurisdiction to review PERB's decisions.' ([Citation]; see § 3509.5.)[10]" (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 413–414 [100 Cal.Rptr.3d 396] (*City of San Jose*).)

Having outlined the general scope of PERB's exclusive initial jurisdiction, we turn to the issue of whether PERB has exclusive initial jurisdiction in this matter.

### PERB Has Exclusive Initial Jurisdiction

We begin by examining the Union's petition to compel arbitration in order to determine whether the underlying conduct on which the petition is based may fall within PERB's exclusive initial jurisdiction. (*El Rancho, supra*, 33 Cal.3d at p. 954, fn. 13.)

The petition expressly states that the Union made "a request to meet and confer with the City over the implementation of the FFBOR" in accordance with article 44 of the parties' MOA, which provides that in the event any applicable state law imposes additional obligations on the City, "the parties shall meet and confer or negotiate on the Article or subsections thereof affected." The petition further states, "By this provision, the parties have agreed to meet and confer or negotiate upon any change in State law which imposes additional obligations on the City, as occurred with the promulgation of the FFBOR. The parties need to meet and confer . . . over the rules and procedures that will be instituted to accommodate the fire fighters' right to an

---

[10] Section 3509.5, subdivision (a) provides in part, "(a) Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case, and any party to a final decision or order of the board in a unit determination, representation, recognition, or election matter that is not brought as an unfair practice case, may petition for a writ of extraordinary relief from that decision or order."

administrative appeal following a written reprimand." According to the petition, the City "refuse[d] to bargain" regarding the "effects and implications of the implementation of the FFBOR."

As to the Union's claimed entitlement to arbitration, the petition states, "The dispute concerns a question regarding the interpretation and application of the MOA, i.e., whether under the separability provision of Article 44 of the MOA the parties must bargain over the implementation of the FFBOR. Hence, it is required to be submitted to arbitration pursuant to the terms of the MOA, under the terms of San Jose City Charter section 1111, and pursuant to the California Supreme Court's recognition that '(s)tate policy in California "favors arbitration provisions in collective bargaining agreements . . . ." ' [Citation.]"

Based on the above language in the Union's petition, we find that the underlying conduct on which the Union's petition is based is the City's refusal to meet and confer regarding the implementation of the additional obligations that the FFBOR imposes on the City. The issue is therefore whether the City's refusal to meet and confer constitutes an unfair labor practice under the MMBA that falls within PERB's exclusive initial jurisdiction. (*City of San Jose, supra*, 178 Cal.App.4th at pp. 413–414.)

This court has determined that "[o]ne key provision of the MMBA is its meet-and-confer requirement. 'Section 3505 of the MMBA requires governing bodies of local agencies to "meet and confer [with employee representatives] in good faith regarding wages, hours, and other terms and conditions of employment" and to "consider fully" such presentations made by the employee organizations.' [Citation.]" (*DiQuisto v. County of Santa Clara* (2010) 181 Cal.App.4th 236, 254 [104 Cal.Rptr.3d 93].) Additionally, the California Code of Regulations provides, "It shall be an unfair practice for a public agency to do any of the following: [¶] . . . [¶] . . . Refuse or fail to meet and confer in good faith with an exclusive representative as required by [section] 3505 or any local rule adopted pursuant to [section] 3507." (Cal. Code Regs., tit. 8, § 32603, subd. (c).)

The California Supreme Court recently emphasized that the duty to meet and confer in good faith is limited to matters within the scope of representation. (*International Assn. of Firefighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 271 [120 Cal.Rptr.3d 117, 245 P.3d 845] (*Internat. Assn. of Firefighters*).) The scope of representation includes, among other things, management decisions "directly defining the employment relationship, such, as wages, workplace rules, and the order of succession of layoffs and recalls. . . . [Citation.]" (*Id.* at p. 272.)

In the present case, the parties do not dispute that the conditions of employment addressed by the FFBOR, including the procedures for a firefighter's administrative appeal of a disciplinary matter, fall within the scope of representation. Therefore, the City's refusal to meet and confer regarding whether it is obligated to implement a provision of the FFBOR arguably constitutes a violation of the employer's duty to meet and confer in good faith and, consequently, may constitute a violation of section 3505 of the MMBA. Since PERB has exclusive initial jurisdiction over claims of unfair practices, which include claimed violations of the MMBA, we determine that PERB has exclusive initial jurisdiction in this case. (*City of San Jose, supra,* 178 Cal.App.4th at pp. 413–414.) The trial court therefore properly denied the Union's petition to compel arbitration on the ground that PERB, not the court, has exclusive initial jurisdiction in this labor dispute.

### Concurrent Jurisdiction

Relying on the decision in *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 [124 Cal.Rptr. 513, 540 P.2d 609] (*City of Glendale*), the Union alternatively contends that the superior court has concurrent jurisdiction because the Union has alleged a breach of contract claim that is subject to Labor Code section 1126, which authorizes enforcement of a collective bargaining agreement in the state courts.

In *City of Glendale*, the issue was whether a collective bargaining agreement entered into under the MMBA was binding upon the parties, such that the City of Glendale could not unilaterally enact a salary ordinance that conflicted with the parties' agreement. (*City of Glendale, supra,* 15 Cal.3d at pp. 332–333.) The California Supreme Court ruled that a properly ratified collective bargaining agreement was enforceable and the city employees' union could maintain a lawsuit challenging the salary ordinance. (*Id.* at pp. 337–338, 340–341.) The court also ruled the union was not required to exhaust the administrative remedy provided by a city ordinance establishing a grievance procedure, because the grievance procedure was inadequate. (*Id.* at pp. 342–342.) Since *City of Glendale* was decided in 1975, the decision predates the 2000 extension of PERB's jurisdiction to cover matters under the MMBA (Stats. 2000, ch. 901, § 8, p. 6607) and the decision did not, and could not, address an issue of concurrent jurisdiction. "Obviously, cases are not authority for propositions not considered therein. [Citations.]" (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 [20 Cal.Rptr.2d 330, 853 P.2d 496], fn. omitted.)

The decision in *Fresno Unified School Dist. v. National Education Assn.* (1981) 125 Cal.App.3d 259 [177 Cal.Rptr. 888] (*Fresno Unified School Dist.*) is instructive with regard to the issue of concurrent jurisdiction. In that case,

the Fresno Unified School District brought an action against the local teachers' organization after the "teachers engaged in a work stoppage" despite a no-strike provision in the parties' collective bargaining agreement. (*Id.* at p. 262.) The complaint included two tort causes of action and "a carefully limited contract count alleging the agreement not to strike or withhold services and its breach by Teachers." (*Id.* at p. 263.) The trial court sustained the teachers' organization's demurrer on the ground that PERB had exclusive jurisdiction and therefore the school district had not exhausted its administrative remedies under the Educational Employment Relations Act (EERA; §§ 3540–3549.3). (125 Cal.App.3d at p. 263.)

The appellate court in *Fresno Unified School Dist.* found that the teachers' strike arguably constituted an unfair labor practice and therefore agreed that "the 'initial determination' of an unfair practice must be by the [PERB] even though the practice might also violate the terms of a contract . . . ." (*Fresno Unified School Dist., supra,* 125 Cal.App.3d at p. 264.) The court also found that the trial court had properly dismissed the tort claims because "[a]t the minimum, the initial review of these facts must be in PERB as to the tort causes of action. We do not decide what, if anything, may be left of the tort theories of action after a PERB review." (*Id.* at p. 273.)

However, as to the contract cause of action, the court determined that "the apparent conflict between the jurisdiction of PERB over unfair practices and the right of the parties to litigate their contractual rights under Labor Code section 1126 requires an accommodation." (*Fresno Unified School Dist., supra,* 125 Cal.App.3d at p. 272.) The accommodation chosen by the court was to allow the trial court to stay the contract action pending PERB's resolution of the unfair practice charges "which are within its exclusive jurisdiction." (*Id.* at p. 274.) The decision in *Fresno Unified School Dist.* was followed in *Personnel Com. v. Barstow Unified School Dist.* (1996) 43 Cal.App.4th 871, 891–892 [50 Cal.Rptr.2d 797], in which the court determined that PERB had exclusive initial jurisdiction to the extent the employee association's claims constituted an unfair practice claim. The court also directed a stay of the civil action because a PERB decision might not obviate the claims that the Barstow Unified School District had violated the Education Code.

The Union argues that *Fresno Unified School Dist.* was wrongly decided because federal law gives the federal courts and the National Labor Relations Board concurrent jurisdiction over claims of an unfair labor practice that also violates the term of a collective bargaining agreement. However, as the *Fresno Unified School Dist.* court noted, there is a distinction between state and federal law regarding the initial jurisdiction for an unfair practice charge. Section 3541.5, the provision of the EERA that is analogous to section 3509

of the MMBA, provides in part, "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the [PERB]." Thus, "instead of sharing the jurisdiction with the judiciary, section 3541.5 conflicts with the federal [section] 301 [of the Labor-Management Relations Act, 1947 (29 U.S.C. § 185(a))] and the state [Labor Code section] 1126 by its clear statement that the 'initial determination' of unfair practice is with PERB." (*Fresno Unified School Dist., supra*, 125 Cal.App.3d at p. 268.) In contrast, 29 United States Code section 185, subdivision (a) provides, "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

In the present case, even assuming that concurrent jurisdiction between PERB and the civil courts may exist in some cases, we determine for several reasons that the decision in *Fresno Unified School Dist.* does not compel the exercise of concurrent jurisdiction here.

■ To begin with, we find that the Union has failed to exhaust its administrative remedies. In *Operating Engineers*, the California Supreme Court instructed that "[w]henever possible, labor disputes asserting unfair labor practices under the MMBA should be submitted first to PERB rather than a court." (*Operating Engineers, supra*, 49 Cal.4th at p. 611.) The court in *Operating Engineers* also provided the following guidelines for determining, on a case-by-case basis, whether a party claiming an unfair labor practice under the MMBA "must await PERB's adjudication of an unfair labor practice complaint before seeking judicial relief . . . ." (49 Cal.4th at p. 609.)

"When remedies before an administrative forum are available, a party must in general exhaust them before seeking judicial relief. [Citation.] Exhaustion requires 'a full presentation to the administrative agency upon all issues of the case and at all prescribed stages of the administrative proceedings. [Citation.]" (*Operating Engineers, supra*, 49 Cal.4th at p. 609.) However, "[t]he exhaustion doctrine has certain exceptions. [Citation.] The doctrine does not apply when the administrative remedy is inadequate. [Citation.] For example, it does not apply when the administrative procedure is too slow to be effective [citation], or when irreparable harm would result by requiring exhaustion of administrative remedies before seeking judicial relief [citations], or when it is clear that seeking administrative remedies would be futile [citation]." (*Ibid.*)

The issue in *Operating Engineers* was whether a public entity concerned that a threatened strike by employees would create a "substantial and imminent threat to public health and safety" was required to file an unfair labor practice complaint with PERB before seeking a court injunction prohibiting the strike. (*Operating Engineers, supra,* 49 Cal.4th at p. 601.) The California Supreme Court agreed with this court that "PERB has initial jurisdiction over a claim by a public entity that a strike by some or all of its employees is illegal." (*Ibid.*) Further, the court ruled that "[i]f an exception to the doctrine of exhaustion of administrative remedies is claimed, the trial court should afford due deference to the PERB and issue injunctive relief only when it is clearly shown that PERB's remedy would be inadequate." (*Id.* at p. 611.)

The administrative remedy provided by PERB's exclusive initial jurisdiction is set forth in section 3509, subdivision (b), which provides that PERB has exclusive jurisdiction to make the "initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of the [MMBA]." Thus, PERB "possesses 'broad' remedial powers enabling it 'to take action and make determinations as are necessary to effectuate the policies of' the statutes it administers." (*International Federation of Prof. & Technical Engineers v. Bunch* (1995) 40 Cal.App.4th 670, 679 [46 Cal.Rptr.2d 813].)

We find that the administrative remedy provided by PERB is adequate in this case because PERB is authorized to make the initial determination as to whether a party to a collective bargaining agreement has committed an unfair practice by refusing to meet and confer regarding a matter within the scope of representation. (§ 3509, subd. (b).) For example, in *Internat. Assn. of Firefighters,* the union filed an unfair labor practice charge with PERB, alleging that the City had violated the MMBA by failing to meet and confer regarding a layoff decision, but PERB declined to issue a complaint after determining that the layoff decision was not subject to collective bargaining. (*Internat. Assn. of Firefighters, supra,* 51 Cal.4th at p. 266.)

The Union contends, however, that administrative remedies are inadequate because PERB does not have jurisdiction to compel the parties to engage in interest arbitration. " ' "Interest arbitration, unlike grievance arbitration, focuses on what the terms of a new agreement should be, rather than the meaning of the terms of the old agreement." ' [Citations.]" (*City of San Jose, supra,* 178 Cal.App.4th at p. 414; see *County of Sonoma v. Superior Court* (2009) 173 Cal.App.4th 322, 341–342 [93 Cal.Rptr.3d 39] [interest arbitration concerns the formation of a collective bargaining agreement]; *Hess Collection Winery v. Agricultural Labor Relations Bd.* (2006) 140 Cal.App.4th 1584, 1596–1597 [45 Cal.Rptr.3d 609] [same].) As the Union points out,

section 3509, subdivision (e), provides, "Notwithstanding subdivisions (a) to (c), inclusive, consistent with, and pursuant to, those provisions of Sections 3500 and 3505.4, superior courts shall have exclusive jurisdiction over actions involving interest arbitration . . . when the action involves an employee organization that represents firefighters, as defined in Section 3251."

We do not believe that the labor dispute at issue here involves interest arbitration. As we have discussed, the Union's petition to compel arbitration is based upon Article 44 of the parties' expired "old agreement," which provides that "should . . . any applicable State or Federal law or regulation . . . impose additional obligations on the City, the parties shall meet and confer or negotiate on the Article or subsections thereof affected." (Underscoring omitted.) The Union's petition accordingly does not arise from a labor dispute regarding the terms of a new agreement and does not implicate interest arbitration.

The Union also contends that its claim of "contract breach" will be "excused" if PERB has exclusive initial jurisdiction. To the contrary, as discussed in *Internat. Assn. of Firefighters*, the MMBA provides for judicial review of PERB's decisions at section 3509.5, subdivision (a). That section provides in part, "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case, and any party to a final decision or order of the board in a unit determination, representation, recognition, or election matter that is not brought as an unfair practice case, may petition for a writ of extraordinary relief from that decision or order. . . ." (§ 3509.5, subd. (a).)

Moreover, PERB's decision not to issue a complaint in an unfair practice case may receive judicial review under the superior court's "traditional mandate jurisdiction" where the " 'complaining party raises a colorable claim that the decision violates [a] constitutional right [citations] or exceeds a specific grant of authority [citations]' or is 'based on an erroneous construction of an applicable statute.' [Citations.]" (*Internat. Assn. of Firefighters, supra*, 51 Cal.4th at p. 268.) Accordingly, judicial review is available for PERB's decision regarding a claim that a party to a collective bargaining agreement refused to meet and confer in violation of the collective bargaining agreement.

The Union also argues that under the principle of concurrent jurisdiction, the PERB proceedings and the trial court proceedings on the Union's petition to compel arbitration must proceed simultaneously so that the parties are not deprived of their contractual dispute resolution process. However, because the

City has refused to meet and confer regarding the implementation of the FFBOR, as we have discussed, PERB must make the initial determination as to whether the City is obligated to do so. Since the parties have yet to meet and confer, no bargaining has taken place and no impasse has been declared. In short, the parties' contractual dispute process under their MOA has not been properly invoked under section 1111 of the San Jose City Charter. A claim that the parties have been deprived of their contractual dispute resolution process is therefore premature.

Another reason that concurrent jurisdiction does not exist in this case is the probability that no issues will remain in connection with the Union's petition to compel arbitration after PERB exercises its exclusive initial jurisdiction regarding the meet-and-confer issue. If PERB decides that the City is obligated to meet and confer regarding the implementation of the FFBOR, the parties may then commence bargaining regarding the FFBOR. In the course of bargaining, the parties may reach an agreement regarding the implementation of the FFBOR or they may bargain to impasse and invoke their contractual dispute resolution process. Whether the City may be compelled to arbitrate at that future time is an issue that is obviously speculative and outside the scope of the Union's present petition to compel arbitration. Alternatively, if PERB decides that the City is not obligated to meet and confer, then the City will have no obligation to bargain and cannot be compelled to arbitrate the FFBOR issue.

Since it does not appear that the contract claim asserted by the Union in its present petition to compel arbitration will remain after PERB exercises its exclusive initial jurisdiction, the instant case is distinguishable from *Fresno Unified School Dist.* where there was a remaining breach of contract claim based on the teachers' previous strike action. (*Fresno Unified School Dist., supra*, 125 Cal.App.3d at pp. 273–274.) Therefore, we find no basis for either simultaneous concurrent jurisdiction or a stay of the petition to compel arbitration pending PERB's decision.

Having determined that PERB has exclusive initial jurisdiction in this matter and for that reason the trial court properly denied the Union's petition to compel arbitration, we do not reach the issue of whether the trial court erred in denying the petition on the alternative ground of the parties' failure to satisfy the meet-and-confer prerequisite to arbitration set forth in their collective bargaining agreement. We emphasize, however, that in our decision we express no opinion as to the merits of the parties' labor dispute.

### *The Second Appeal—H035425*

In its opening brief in its second appeal, the Union states that it seeks review of the February 23, 2010 postjudgment order awarding attorney's fees

of $24,745 to the City only in the event that this court reverses the judgment on the order denying the petition to compel arbitration on the merits.

Since we have upheld the trial court's order denying the Union's petition to compel arbitration, we will also affirm the February 23, 2010 attorney's fees order.

## VI. DISPOSITION

In case No. H035065, the November 5, 2009 judgment (on the order denying the International Association of Firefighters, Local 230's petition for a writ of mandate and to compel arbitration and the order denying the City of San Jose's motion for judgment on the pleadings) is affirmed. In case No. H035425, the February 23, 2010 postjudgment order awarding attorney's fees and costs is affirmed. The parties are to bear their own costs on appeal.

Premo, Acting P. J., and Grover, J.,* concurred.

A petition for a rehearing was denied June 21, 2011, and the petition of all appellants for review by the Supreme Court was denied September 14, 2011, S194497.

---

*Judge of the Monterey Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.